IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:18CV804 |
| | ) | |
| BRIAN BERNHART, | ) | |
|     Defendant. | ) | COMPLAINT |

The United States of America, by Matthew G.T. Martin, United States Attorney for the Middle District of North Carolina, brings this action, complaining and alleging as follows:

1. This is a civil action brought by said Plaintiff and the court has jurisdiction over this action by virtue of 28 U.S.C. §1345.

2. That the Defendant, Brian Bernhart, resides in Concord, North Carolina, within the jurisdiction of this court.

3. On or about May 19, 1996, the Defendant executed a Promissory Note for a Federal Health Education Assistance Loan, a copy of which is hereto annexed as Exhibit "A". The Defendant has defaulted in the payments due under said Promissory Note and owes the Plaintiff the amount of $31,692.98 which includes principal in the amount of $31,284.91 interest computed as of July 15, 2018, in the amount of $408.07, and additional interest at the rate of 3.445 percent per annum from July 16, 2018, until judgment; together with post-judgment interest as allowed by law and costs, as is more fully shown on the Certificate of Indebtedness attached hereto as Exhibit "B".

4. That the Plaintiff has made demand upon the Defendant for payment of the aforesaid indebtedness, but the Defendant has failed, neglected and refused to satisfy said indebtedness.

5. To declarant's best information and belief the Defendant is not an infant or incompetent person and is not in the military service within purview of the Servicemembers Civil Relief Act (SCRA) (50 USC App. § 3901 et seq, as amended), formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940.

6. Plaintiff has contacted the Defense Manpower Data Center and was informed that it does not possess any information indicating the Defendant's status as active.

WHEREFORE, Plaintiff prays for judgment against the Defendant for the amount of $31,692.98, which includes principal in the amount of $31,284.91, interest computed as of July 15, 2018, in the amount of $408.07, and additional interest at the rate of 3.445 percent per annum from July 16, 2018, until judgment; together with post-judgment interest as allowed by law, costs and for such other and further relief as the court may deem just, fair and reasonable.

MATTHEW G.T. MARTIN
United States Attorney

/s/ Joan B. Childs
Assistant United States
Attorney NCSB# 18100
United States Attorney's Office
Middle District of North Carolina
101 S. Edgeworth St., 4th Floor
Greensboro, NC 27401
Telephone: (336) 333-5351
Email: joan.childs@usdoj.gov

Pursuant to Fed. R. Civ. P. 5.2 and/or Fed. R. Crim. P. 49.1, Personal Data Identifiers Have Been Redacted.

DEPARTMENT OF HEALTH AND HUMAN SERVICES
PUBLIC HEALTH SERVICE
HEALTH RESOURCES AND SERVICES ADMINISTRATION

FORM APPROVED: OMB No. 0915-0043
Expiration Date: 09/30/97
See OMB Statement on Reverse side.

# FEDERAL HEALTH EDUCATION ASSISTANCE LOAN PROGRAM
## Promissory Note—Variable

**WARNING:** Any person who knowingly makes a false statement or misrepresentation in a HEAL loan transaction, bribes or attempts to bribe a Federal official, fraudulently obtains a HEAL loan, or commits any other illegal action in connection with a HEAL loan is subject to possible fine and imprisonment under Federal statute.

**Public reporting burden** for this collection of information is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing burden to: Reports Clearance Officer, Attention, PRA, United States Public Health Service, Hubert H. Humphrey Building, Room 721-B, 200 Independence Avenue, S.W., Washington, D.C. 20201; and to the Office of Management and Budget, Paperwork Reduction Project (0915-0043), Washington, D.C. 20503

| Last Name (Print or type) | First Name | Middle Initial | Student Number (SSN) |
|---|---|---|---|
| Bernhart | Brian | C | [redacted]2453 |

Other Name(s) Used:

PERMANENT (HOME) ADDRESS: 7901 Henry Ave G411  City: Philadelphia  State: PA  Zip Code: 19128  Area Code/Telephone Number: 215-487-7464

LOCAL (SCHOOL) ADDRESS: 3223 N. Broad St  City: Philadelphia  State: PA  Zip Code: 19140  Area Code/Telephone Number: 215-221-7663

## PROMISE TO PAY

I, Brian Bernhart, the borrower, promise to pay to The Chase Manhattan Bank, N.A., New York, N.Y., the lender or the subsequent holder of this Note, the principal sum of $ 18,500, to the extent it is advanced to me, to pay interest on the principal sum as set out below, and to pay authorized late charges, all reasonable attorney's fees, and other costs and charges that are permitted by Federal regulations and are necessary for the collection of any amount not paid when due.

**The Lender and I further understand and agree that:**

**NOTIFICATION**

I must immediately notify the lender (in this Note, the term "lender" includes a subsequent holder of the Note) in writing if any of the following occurs to me before the loan is repaid in full: 1) change of address, 2) name change (e.g., maiden name to married name), 3) failure to enroll in a HEAL school for the period for which the loan is intended, 4) transfer to another school, 5) withdrawal from school or attendance on a less than full-time basis, 6) graduation, 7) failure to begin any activity eligible for deferment status, or 8) cessation of participation in an activity eligible for deferment status.

**INTEREST**

1. Beginning on the day the loan is disbursed, interest shall accrue. Payment of the interest accruing before the beginning of the repayment period may be postponed until the date upon which repayment of principal is required to begin or to resume. Interest which has accrued and is not paid may be added to the principal sum of this Note not more frequently than every 12 months. Beginning when the repayment period commences, interest shall accrue and be paid as set forth in the Repayment Schedule which the lender shall establish and provide to me. The frequency with which interest that is not paid shall be added to the principal sum of this Note shall be as follows:

(a) In-school period: No capitalization
(b) Deferment period (prior to the grace period): No capitalization
(c) Grace period: Once at end of grace period
(d) Repayment period: Not more frequently than annually

2. Interest shall accrue and be payable at a yearly rate of interest which may not exceed a variable rate calculated by the Secretary of the Department of Health and Human Services for each calendar quarter and computed by determining the average of the bond equivalent rates for the ninety-one day U.S. Treasury Bills auctioned during the preceding quarter, plus three percent, rounding this figure up to the nearest one-eighth of one percent. **The rate of interest applied to this Note shall be as follows:**

(a) In-school period: Average 91 day T-bill + 1.85%, rounded up
(b) Deferment period (prior to the grace period): Average 91 day T-bill + 1.85%, rounded up
(c) Grace period: Average 91 day T-bill + 1.85%, rounded up
(d) Repayment period: Average 91 day T-bill + 1.85%, rounded up

3. Any change in the yearly rate of interest will affect the payment amounts, the number of payments, or the amount due at maturity.

**INSURANCE PREMIUM**

I agree to pay, in addition to interest and principal due, an amount equal to my share of the premium that is required by the Secretary in order to provide insurance coverage on this Note. Payment of an insurance premium calculated in accordance with instructions issued by the Secretary shall be due and payable immediately and may be taken by the lender from the loan proceeds.

**PREPAYMENT**

I may, at my option and without penalty, prepay all or any part of the principal and accrued interest at any time. If I pay off early, I will not have to pay a penalty. If I pay off early, I will not be entitled to a refund of part of the insurance premium.

**REPAYMENT**

1. Repayment shall be made in monthly installments over a repayment period which starts the first day of the tenth month after the month in which
(A) I cease to be a full-time student at a HEAL school;
(B)(1) I cease to be a participant in an accredited internship or residency program of not more than four years in duration,[1] or
(2) I complete the fourth year of an accredited internship or residency program of more than four years in duration;[1] or
(C) I cease to be a participant in a fellowship training program not in excess of two years or a participant in a full-time educational activity not in excess of two years which: (1) is directly related, as defined in program regulations, to the health profession for which I prepared at a HEAL school, and (2) in which I may engage during a two-year period which begins within twelve months after I complete my participation in an internship or residency program described in clause (B)(1) or clause (B)(2) of this paragraph or before I complete my participation in such an internship or residency program.

[1] Except that, if I received a HEAL loan before October 22, 1985, and I become an intern or a resident in an accredited program before the first day of the tenth month after I cease to be a full-time student at a HEAL school, then the repayment period begins on the first day of the tenth month after I cease to be an intern or a resident.

**THE TERMS OF THIS NOTE ARE CONTAINED ON BOTH SIDES OF THIS DOCUMENT**

I acknowledge that I have received, read and understand the provisions of this Note, including those set forth on the reverse side and any subsequent pages of this document.

**GENERAL**

The terms of this Note shall be construed according to the Law (42 U.S.C. 292-292p) and the Federal regulation (42 CFR Part 60) governing the administration of the Federal Health Education Assistance Loan (HEAL) Program, copies of which are on file with the holder of this Note.

I agree that all proceeds from this loan will be used solely for tuition and other reasonable education expenses, including fees, books, supplies and equipment, and laboratory expenses, reasonable living expenses, reasonable transportation costs (only to the extent they are directly related to my education), and the HEAL insurance premium. I further agree that the check(s) for the proceeds of this loan shall be made payable jointly to me and the eligible institution in which I am enrolled, except if I have signed a borrower authorization statement allowing the loan proceeds to be disbursed to the eligible institution by an electronic transfer mechanism approved by the Secretary.

By my signature below I CERTIFY that I have read and understand my rights and reponsibilities regarding the HEAL loan under this Promissory Note.

| SIGNATURE OF BORROWER | ADDRESS | DATE |
|---|---|---|
| Brian Bernhart | 7901 Henry Ave G411 Philadelphia PA | May 19, 1996 |
| SIGNATURE OF ENDORSER OR COSIGNER (if any) | ADDRESS | DATE |

GOVERNMENT EXHIBIT A

**NOTICE:** If the borrower is a minor and this Note would not, under applicable State law, create a binding obligation, an endorser also to sign this Note. The lender shall supply a copy of this Note to the borrower.

HRSA-560-1 (Rev. 10/94) 05 P-NOTE 4/95         PAGE 1         COPY 1 - LENDER

2. The repayment period shall not be less than ten years nor more than twenty-five years. Any period described under DEFERMENT and any period of FORBEARANCE shall not be included in determining the ten or twenty-five year periods. If I receive my first HEAL loan on or after October 22, 1985, the repayment period shall not extend to a date that is more than thirty-three years from the date on which I signed this Promissory Note. If I received a HEAL loan prior to October 22, 1985, however, any period described under DEFERMENT shall not be included in determining the thirty-three year period.

3. At least thirty but not more than sixty days before the commencement of my repayment period, I must contact the holder of my loan to establish the precise terms of repayment. My repayment schedule will require monthly payments. However, I may select a monthly repayment schedule with substantially *equal* installments, a monthly repayment schedule with *graduated* installments that increase in amount over the repayment period, or a monthly repayment schedule with payments that are based on my debt-to-income ratio during the first 5 years of repayment, if I contact the holder of my loan within the period described above. If I do not contact the holder and do not respond to contacts from the holder, the holder may establish a monthly repayment schedule with substantially equal installment payments, subject to the terms of this Note.

4. The terms and conditions of repayment shall be set forth in a separate Repayment Schedule which the lender shall establish and shall provide me prior to the beginning of the repayment period.

5. Unless I agree otherwise, I shall make a minimum annual repayment of an amount equal to the annual interest on the unpaid principal balance. Except as provided above, if I have other outstanding HEAL loans, the sum of all payments to all holders on my HEAL loans shall not be less than an amount equal to the consolidated interest on the unpaid principal balances.

6. I understand that this loan must be repaid in accordance with my Repayment Schedule. If my account becomes overdue by more than sixty days, the lender must notify an appropriate consumer credit reporting agency of this, which may significantly and adversely affect my credit rating. The lender must also use collection agents and utilize other collection activities (which may include litigation) if my account becomes overdue.

## CREDIT REPORTING AGENCY

My lender must disclose my loan, and any other relevant information, to one or more national consumer credit reporting agencies.

## LATE CHARGE

If a scheduled payment is late, I will be charged five cents for each dollar of the installment payment due.

## DEFERMENT

1. Monthly installments of principal and interest need not be paid, but interest shall accrue:
   (A) When I am carrying a full-time course of study at a HEAL school or at an institution of higher education eligible to participate in the Stafford Loan Program.
   (B) When I am participating in a fellowship training program or full-time educational activity for not in excess of two years as described in paragraph 1 under REPAYMENT above.
   (C) Not in excess of three years for each of the following when I am:
      (1) a member of the Armed Forces of the United States;
      (2) in service as a volunteer under the Peace Corps Act;
      (3) in service as a full-time volunteer under Title I of the Domestic Volunteer Service Act of 1973; and
      (4) a member of the National Health Service Corps;
   (D) Not in excess of four years when I am a participant in an accredited internship or residency program. Except that if I received my first HEAL loan on or after October 22, 1985, this limitation of four years also includes any period of deferral of the onset of the repayment period for participation in an internship or residency program.
   (E) Not in excess of one year, if I received the loan while enrolled in a school of chiropractic and I graduated from a school of chiropractic; and
   (F) Not in excess of three years, when I have completed an accredited internship or residency training program in osteopathic general practice, family medicine, general internal medicine, preventive medicine, or general pediatrics, and am practicing primary care.

2. To receive a deferment, including a deferral of the onset of the repayment period (see TREATMENT), I must, prior to the onset of the activity and annually thereafter, submit to the lender evidence of my status in the deferment activity and evidence that verifies deferment eligibility of the activity. It is my responsibility to provide the lender with all required information or other information regarding the requested deferment.

## DEATH/DISABILITY

If I die or become totally and permanently disabled, my unpaid indebtedness on this Note shall be cancelled in accordance with applicable Federal statute and regulations.

## FORBEARANCE

I have the right to be granted forbearance whenever I am temporarily unable to make scheduled payments on my HEAL loan and I continue to repay the loan in an amount commensurate with my ability to repay the loan unless the Secretary determines that my default is inevitable and the forbearance will be ineffective in preventing default. A lender must exercise forbearance in accordance with terms that are consistent with the thirty-three year limitation on the length of repayment if the lender and the borrower agree in writing to the new terms. Each forbearance period may not exceed six months and the total period of forbearance (with or without interruption) granted to me must not exceed two years unless an extension is granted by the Secretary.

## DEFAULT

If I do not make payments when due, my loan may be declared in default. If I default, the Federal Government will take over my loan and I will then owe the Government. The Federal Government will actively pursue me for repayment of the debt, including the use of collection agents and reporting my default to consumer credit reporting agencies or to the Internal Revenue Service for purpose of locating me or for income tax refund offset, and referral to the Department of Justice for litigation. I may be the subject of court action to force me to pay. The Secretary shall also cause to be reduced Federal reimbursements or payments for health services under any Federal law to borrowers who are practicing their professions and have defaulted on their loans, and may make other administrative offsets, including salary offsets for Federal employees. The Government may also report any written off debt to the Internal Revenue Service as taxable income, and may undertake any other debt collection procedures in accordance with the Claims Collection Regulations (45 CFR Part 30).

1. In the event of my default on this loan, the entire unpaid loan including interest due and accrued shall, at the option of the holder of this Note, become immediately due and payable.

2. If I fail to make a scheduled payment, or fail to comply with any other term of this Note, the lender may: (a) refer my loan to a collection agent for further collection efforts; (b) initiate legal proceedings against me; (c) refer my loan to the Secretary for collection assistance; and (d) obtain my address from the Internal Revenue Service, through the Secretary, if the lender has no current address for me.

3. If I fail to make a scheduled payment, or fail to comply with any other term of this Note, any HEAL school or post-graduate training program I have attended may assist in the collection of my loan, including providing information concerning me to the Secretary and to past and present lenders and holders of my HEAL loans.

4. No Federal or State statute, regulation, or administrative limitation shall terminate the period within which suit may be filed, a judgment may be enforced or an offset, garnishment, or other action may be initiated or taken by the Secretary, the Attorney General, or other administrative head of another Federal agency, for the repayment of the amount due on this Note.

## BANKRUPTCY

Under current law, I may not have my loan discharged in bankruptcy during the first 7 years of the repayment period, under **any** chapter of the Bankruptcy Act, including Chapter 13. I may have a HEAL loan discharged in bankruptcy after the first 7 years of the repayment period, excluding any periods of forbearance and deferment, only upon a finding by the Bankruptcy Court that the non-discharge of such debt would be unconscionable and upon the condition that the Secretary shall not have waived his or her rights to reduce any Federal reimbursements or Federal payments for health services under any Federal law in amounts up to the balance of the loan. Any changes in the HEAL statute regarding the discharge of a HEAL loan in bankruptcy will apply to this loan.

## BORROWER'S RIGHTS

1. The lender (holder) cannot change the terms of my HEAL loan without my consent.
2. The lender must provide me with a copy of the completed promissory note when the loan is made. The lender (holder) must return the note to me when the loan is paid in full.
3. The loan check must be made payable jointly to me and the school except that if loan proceeds are disbursed by an electronic transfer mechanism approved by the Secretary, then I must sign a borrower authorization statement. The check or draft must require my endorsement.
4. The lender (holder) will provide me with a repayment schedule before the repayment period begins.
5. If the loan is sold from one lender to another lender, or if the loan is serviced by a party other than the lender, the holder must notify me within 30 days of the transaction and I must be sent a notification which spells out my obligations to the new holder.
6. I have a right to a 9-month "grace period" before repayment begins after I have completed school attendance, internship and residency in an accredited program, or a fellowship training program or full-time educational activity approved by the Secretary for this purpose.
7. I have a right to deferment of principal and interest repayments if certain conditions exist. Under deferment I am not required to make payments on the loan principal or interest for a period of time. However, interest continues to accrue during any deferment period. To receive a deferment, including a deferral of the onset of the repayment period (See Section 60.11(a) of the HEAL regulations.) I must, prior to the onset of the activity and annually thereafter, submit to the holder of the note evidence of my status in the deferment activity and evidence that verifies deferment eligibility of the activity. It is my responsibility to provide the holder with all required information regarding the requested deferment.
8. I have a right to prepay the whole or any portion of the loan at any time without a penalty.
9. If I contact the holder of my loan at least 30 but not more than 60 days before the commencement of my repayment period to establish the precise terms of repayment, I may select a monthly repayment schedule with substantially equal installments, a monthly repayment schedule with graduated installments that increase in amount over the repayment period, or a monthly repayment schedule with payments that are based on my debt-to-income ratio during the first 5 years of repayment.
10. My loan obligation will be cancelled in the event of my death or permanent and total disability in accordance with applicable Federal statutes and regulations.
11. "Forbearance" means an extension of time for making loan payments or the acceptance of smaller payments than were previously scheduled to prevent me from defaulting on my payment obligations. I have the right to be granted forbearance whenever I am temporarily unable to make scheduled payments of my HEAL loan and I continue to repay the loan in an amount commensurate with my ability to repay the loan unless the Secretary determines that my default is inevitable and the forbearance will be ineffective in preventing default. A lender (holder) must exercise forbearance with terms that are consistent with the 33-year limitation on the length of repayment if the lender (holder) and the borrower agree in writing to the new terms. Each forbearance period may not exceed 6 months and the total period of forbearance (with or without interruption) granted to me must not exceed 2 years unless an extension is granted by the Secretary.
12. The lender (holder) must notify me in writing of the balance owed for principal, interest, insurance premiums, and any other charges or fees owed to the lender (holder), at least every 6 months from the time my loan was disbursed to me.
13. The lender and I, by mutual agreement, may consolidate all of my HEAL notes into a single instrument under the terms applicable to an insured loan made at the same time as the consolidation. The lender or loan holder should provide full information to me concerning the advantages and disadvantages of loan consolidation.
14. If I enter and remain in the primary care field of osteopathic general practice, general internal medicine, general pediatrics, family medicine, or general dentistry, I shall receive preference for participation in the National Health Service Corps Loan Repayment (NHSCLR) program under section 338B of the Public Health Service Act. However, I understand that the NHSCLR program is not an entitlement, but is contingent upon the availability of funding.

## BORROWER'S RESPONSIBILITIES

1. I understand that there is no interest subsidy on a HEAL loan and that I must pay all interest on the loan. If I do not make payments on time or if I default, the total amount to be repaid will be increased by late charges and may be increased by additional interest costs, attorney's fees, court costs and other collection costs.
2. I agree to pay an insurance premium if charged by the lender, not to exceed my share of the amount required by the Secretary to provide insurance coverage on a HEAL loan. I understand that I will not be entitled to any refund of this premium.
3. I must immediately notify the lender (holder) in writing if any of the following occurs to me before the loan is repaid in full: a. change of address, b. name change (e.g., maiden name to married name), c. failure to enroll in a HEAL school for the period for which the loan is intended, d. transfer to another school, e. withdrawal from school or attendance on a less than full-time basis, f. graduation, g. failure to begin any activity eligible for deferment status, or h. cessation of participation in an activity eligible for deferment status.
4. I must notify the lender (holder) of any occurrence which may affect my eligibility to receive or to continue to receive a deferment of principal and interest payments.
5. To receive a deferment, including a deferral of the onset of the repayment period (See Section 60.11(a) of the HEAL regulations.), I must, prior to the onset of the activity and annually thereafter, submit to the holder of the note evidence of my status in the deferment activity and evidence that verifies deferment eligibility of the activity. It is my responsibility to provide the holder with all required information or other information regarding the requested deferment.
6. I understand that this loan must be repaid in accordance with my repayment schedule. If my account becomes overdue by more than 60 days, the lender (holder) must notify an appropriate consumer credit reporting agency of this, which may significantly and adversely affect my credit rating. The lender (holder) must also use collection agents and utilize other collection activities (which may include litigation) if my account becomes overdue.
7. If I do not make payments when due, my loan may be declared in default. If I default, the Federal Government will take over my loan and I will then owe the Government. The Federal Government will actively pursue me for repayment of the debt, including the use of collection agents and reporting my default to consumer credit reporting agencies or to the Internal Revenue Service for purpose of locating me or for income tax refund offset, and referral to the Department of Justice for litigation. I may be the subject of court action to force me to pay. The Secretary shall also cause to be reduced Federal reimbursements or payments for health services under any Federal law to borrowers who are practicing their professions and have defaulted on their loans, and may make other administrative offsets, including salary offsets for Federal employees. The Government may also report any written off debt to the Internal Revenue Service as taxable income, and may undertake any other debt collection procedures in accordance with the Claims Collection Regulations (45 CFR Part 30).
8. Under current law, I do not have the right to have my loan discharged in bankruptcy during the first 7 years of the repayment period. This prohibition against the discharge of a HEAL loan applies to bankruptcy under any chapter of the Bankruptcy Act, including Chapter 13. I may have a HEAL loan discharged in bankruptcy after the first 7 years of the repayment period, excluding any periods of forbearance and deferment, only upon a finding by the Bankruptcy Court that the non-discharge of such debt would be unconscionable and upon the condition that the Secretary shall not have waived his or her rights to reduce any Federal reimbursements or Federal payments for health services under any Federal law in amounts up to the balance of the loan. Any changes in the HEAL statute regarding the discharge of a HEAL loan in bankruptcy will apply to this loan.

[Stamp: ENDORSED AND ASSIGNED TO THE UNITED STATES OF AMERICA — QUALIFIED FOR REINSURANCE BY THE SECRETARY — STUDENT LOAN INSURANCE ACT AUTHORIZED AGENT FOR HIGHER EDUCATION ASSISTANCE LOAN PROGRAM BY ...]



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Program Support Center

Debt Collection Center

## CERTIFICATE OF INDEBTEDNESS
*Health Education Assistance Loan*

Brian C. Bernhart
4401 Mackenzie Ct. SW
Concord, NC 28027
HHS Claim Number: 50160221
SSN: XXX-XX-2453

**Total debt due the United States as of July 15, 2018: $31,692.98 (principal $31,284.91, interest $408.07).**

I certify that the Department of Health and Human Services' (HHS) records show that the named individual is indebted to the United States in the amount stated above. Interest is computed at a variable rate and adjusted quarterly. Interest is currently accruing at the rate of 3.445% per annum; and $2.95 per day. Due to the compounding of interest, the current principal amount is greater than the original amount borrowed.

The claim arose in connection with Health Education Assistance Loan(s) made by a private lender and assigned to the United States.

Dr. Bernhart applied for and was granted the following Health Education Assistance Loans (HEAL), Section 701-720 of the Public Health Service Act (42 U.S.C. 292).

| Date of Promissory Note | Amount of Promissory Note | Amount Disbursed |
|---|---|---|
| 05/19/1996 | $18,500.00 | $18,500.00 |

Dr. Bernhart signed a promissory note(s) agreeing to repay the loan(s) beginning the first day of the tenth month after ceasing to be a full-time student or completing a residency program.

Due to default, an insurance claim was filed with the United States. The amount due was $26,450.00. The lender's claim was paid by the United States on February 23, 2005, and an assignment of the note(s) was received.

HHS notified Dr. Bernhart by letter dated February 25, 2005, that the previous holder of the HEAL promissory note(s) placed him in default and assigned the note(s) to the U.S. Government.

In a letter dated April 29, 2005, he was advised that his account had been referred to a private collection agency. He was notified that the account would be referred to DOJ for enforced collection unless HHS received payment in full or a RA was concluded.



GOVERNMENT EXHIBIT B

Page 1 of 2

By letters dated June 24, 2005, June 11, 2009 and February 8, 2013, he was advised that his account was delinquent. He was notified of HHS' intent to refer his debt to other Federal agencies for the purpose of administrative offset, which may include Federal tax refund offset, salary offset, wage garnishment, and other Federal or State Agencies payments. He was advised that paying the debt in full or entering into an RA would terminate administrative offset.

On February 08, 2006; November 22, 2010; July 25, 2011; and February 07, 2013, Dr. Bernhart was notified that he had sixty days in which to resolve the delinquent debt or his case would be referred to the DOJ for enforced collection. He did not comply.

Additional notifications and demand letters regarding the indebtedness were sent on the following dates: February 02, 2006; June 23, 2009; July 06, 2009; July 07, 2009; May 23, 2014; May 27, 2014; and November 03, 2015.

In a letter dated May 12, 2018, Dr. Bernhart was sent instructions for entering into a Repayment Agreement (RA). He was notified that unless payment in full or a fully document RA was received within 30 days, the case would be referred to DOJ for enforced collection. He did not comply.

Total Payments made to the United States: $6,455.69.

The following provides a breakdown of payments made on the debt:
| | | |
|---|---|---|
| Voluntary Payments | 03/18/05 to 11/08/11 | $6,029.69 |
| Treasury Offset Payment | 11/10/15 | $426.00 |

Repeated attempts by HHS have been unsuccessful in establishing an acceptable repayment agreement. The debt is now being referred to the U.S. Department of Justice (DOJ) for enforced collection.

**CERTIFICATION:** *Pursuant to 28 U.S.C. 1746, I certify under penalty of perjury that the foregoing is true and correct.*

_8/21/2018_
Date

Melodie R. Sanders
Chief, Debt Referral Section
Program Support Center
U.S. Department of Health and Human Services